[No. 7014–2–I.   Division One.   February 11, 1980.]

WASHINGTON STATE HUMAN RIGHTS COMMISSION, *Petitioner*, v. THE CITY OF SEATTLE, ET AL, *Respondents*.

*Slade Gorton, Attorney General,* and *Winslow Whitman, Assistant,* for petitioner.

*Douglas N. Jewett, City Attorney,* and *Rod P. Kaseguma, Assistant,* for respondents.

DORE, J.—The Washington State Human Rights Commission appeals a trial court order which upheld its subpoena duces tecum rights in securing five employment applications, but directed the Human Rights Commission to delete various personal information before filing the applications as public records.

## ISSUES

1. Did the trial court err in ordering the Washington State Human Rights Commission to delete identifying details contained in certain employment applications subpoenaed from the City of Seattle prior to making them available for public inspection and copying?

2. Was the trial court's protective order an abuse of the court's discretion?

## FACTS

William Farrell filed an application with the City of Seattle for the position of plumber. He was denied employment. Subsequently Farrell filed a complaint with the Washington State Human Rights Commission (Commission) charging the City of Seattle (City) Personnel Department with an unfair practice arising out of age and handicap discrimination, based on its refusal to employ Farrell.

During the ensuing investigation, the Commission issued a subpoena duces tecum to the City, requesting copies of five other applications for the position of plumber. When the City refused to turn over the applications, the Commission sought assistance from the Superior Court. The trial court upheld the validity of the Commission's subpoenas and directed the City to turn the applications over to the Commission. Because the applications contained private

information relating to the applicants, the trial court, pursuant to RCW 42.17.260(1),[1] included the following protective language in its order:

> IT IS FURTHER ORDERED, ADJUDGED and DECREED that the Executive Secretary of the Washington State Human Rights Commission: (1) withhold the above referenced applications for examination from public inspection and copying until the complaint filed by William F. Farrell with the Human Rights Commission on June 17, 1977, including any amendments thereto, is finally determined, and (2) upon final determination of any litigation arising out of the complaint, including any amendments thereto, delete identifying details from the above referenced applications for examination, in accordance with the Xerox copy of an application for examination attached hereto and made a part hereof, before making them available for public inspection and copying.

The City complied with the first part of the order by photocopying the five applications and mailing copies of such applications to the Commission.

Subsequently the Commission found no reasonable cause for believing the "City of Seattle personnel" had committed an unfair practice of discrimination against Farrell, and dismissed the complaint.

Although the complaint is disposed of, the protective order of the Superior Court remains in effect. It is the Commission's contention on appeal that the Superior Court's protective order requiring the Commission to delete any identifying details in the applications prior to a public filing is arbitrary and beyond the jurisdiction of the Superior Court. It reasons that RCW 42.17.260(1) gives the

---

[1]RCW 42.17.260:

"Documents and indexes to be made public. (1) Each agency, in accordance with published rules, shall make available for public inspection and copying all public records. To the extent required to prevent an unreasonable invasion of personal privacy, an agency shall delete identifying details when it makes available or publishes any public record; however, in each case, the justification for the deletion shall be explained fully in writing."

Commission, not the Superior Court, authority to determine what is private in these applications and what should be deleted.

## DECISION

The protective order was requested by the City, pursuant to RCW 42.17.260(1). The City believed that it had an obligation to protect the privacy of job applicants, and that it could not exonerate itself of responsibility by merely conveying unrestricted private and confidential information to another agency and allow the latter to make the decision. The matter was brought before the court on the City's motion to quash the Commission's subpoenas.

The Commission challenges the City's argument by stating that the unabridged copies of the five applications are now in its possession and the Commission should have the right to determine what is private information, and should not be disclosed to the public, pursuant to RCW 42.17-.260(1) and/or WAC 162–04–030.[2]

In the recent case of *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 580 P.2d 246 (1978), the Seattle Post–Intelligencer sought disclosure of information contained in records of the King County Assessor's office. Assessor Hoppe argued, as the Commission does now, that he was vested with a public trust to protect the confidentiality of private information supplied by, or obtained from, the taxpayer. The statutes, he argued, place it within his province to determine what must be disclosed and his exercise of discretion may not be

---

[2]WAC 162–04–030 states in part:

"(1) Records Available.

"(a) *General rule and exceptions.* All public records as defined by Initiative 276 (this includes photographs, tapes, and other materials as well as written documents) prepared, owned, used or retained by the Washington State Human Rights Commission shall be available for public inspection and copying during normal office hours in the office where they are located, except for the following:

". . .

"(v) Any other information which is exempt from public inspection under section 31 of Initiative 276 *and* where disclosure would violate personal privacy or vital government interest." (Italics ours.)

disturbed by the judiciary unless it is arbitrary and capricious.

■ However, our Supreme Court struck down this contention, holding that the interpretation of statutes pertaining to the confidentiality of private information is within the bosom of the judicial system and not the agency. On page 130, our Supreme Court stated in reference to the interpretation of other sections of the disclosure statute, which are relevant here, the following:

> The statutory scheme establishes a positive duty to disclose public records unless they fall within the specific exemptions. Whether or not they do so is a function reserved for the judiciary by the act. The court is the proper body to determine the construction and interpretation of statutes. *State ex rel. O'Connell v. Slavin,* 75 Wn.2d 554, 452 P.2d 943 (1969); *State ex rel. Humiston v. Meyers,* 61 Wn.2d 772, 380 P.2d 735 (1963). Thus, even when the court's interpretation is contrary to that of the agency charged with carrying out the law, it is ultimately for the court to declare the law and the effect of the statute. *Rusan's, Inc. v. State,* 78 Wn.2d 601, 478 P.2d 724 (1970). There is no violation of the separation of powers theory in this function. It is within an orderly concept of checks and balances and the result of constitutional definition of the role of the judiciary. "Both history and uncontradicted authority make clear that '"[i]t is emphatically the province and duty of the judicial department to say what the law is."' [cases cited] even when that interpretation serves as a check on the activities of another branch or is contrary to the view of the constitution taken by another branch." *In re Juvenile Director,* 87 Wn.2d 232, 241, 552 P.2d 163 (1976).

*Hearst Corp. v. Hoppe, supra* at 130.

■ On page 135, the court then goes on to define "the right to privacy" in the following language:

> Inasmuch as the statute contains no definition of the term, there is a presumption that the legislature intended the right of privacy to mean what it meant at common law. *New York Life Ins. Co. v. Jones,* 86 Wn.2d 44, 47, 541 P.2d 989 (1975). The most applicable privacy right

would appear to be that expressed in tort law. Tort liability for invasions of privacy by public disclosure of private facts is set forth in Restatement (Second) of Torts § 652D, at 383 (1977): "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person and (b) is not of legitimate concern to the public." The comment to the Restatement illustrates what nature of facts are protected by this right to privacy.

> Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest.

Restatement, *supra* at 386.

*Hearst Corp. v. Hoppe, supra* at 135–36.

■ Applying the *Hearst* definition of the right to privacy to the subject case, it is manifest that the questions and answers contained in the employment applications are replete with substantial and comprehensive private matters pertaining to the applicant and his past activities. The applications ask questions that are phrased to elicit the most private and confidential matters pertaining to the life of the applicant. Some of these questions are as follows:

1. Reason for leaving each of the designated jobs you have held.

2. What was your last salary at each of these jobs?

3. Questions pertaining to one's complete education, if any.

4. Questions as to whether or not the applicant has served in the military, or is receiving veteran's retirement

pay, and if so, what kind, and whether or not the applicant claims a veteran's preference.

5. Whether you have ever been convicted of any law violation, and if so, give the complete record and the charges, penalties and disposition.

6. Describe any physical, sensory or mental disabilities you may have, if any.

It cannot be disputed by any reasonable person that the public disclosure of material contained in answers to the above questions would or could be highly offensive to the five applicants.

It may well be that *some* questions and answers in the City's applications for employment are not protected by the right of privacy and should be released to the general public. However, the Commission has not delineated what those particular questions and answers are and the courts have no responsibility to do it for the Commission.

We hold that the protective order of the trial judge was reasonable and proper in all respects and was not arbitrary or capricious.

Affirmed.

WILLIAMS and RINGOLD, JJ., concur.