[No. 11695-6-III. Division Three. February 25, 1993.]

JOHN BURKE HATFIELD, *Appellant,* v. COLUMBIA FEDERAL SAVINGS BANK, *Respondent.*

*Harry E. Ries* and *Larson, Tracy & Ries, P.S.,* for appellant.

*Thomas A. Lemly* and *Davis Wright Tremaine,* for respondent.

MUNSON, J. — John Hatfield appeals the dismissal of his age discrimination action, after he rested his case at trial. He contends reversal is required because the trial court incorrectly allocated burdens and his burden was met by showing Columbia Federal Savings Bank's explanation for discharge was "unworthy of credence". We affirm.

John Hatfield was born in 1930 in Wenatchee. In 1973, he was hired by Columbia Federal Savings Bank in Wenatchee as an "at will" employee. In 1974, he became a loan servicing manager. From 1974 to 1980, he received, overall, above average evaluations and salary increases at his annual review by his supervisor, Joe Evans.

In 1981, Thomas Guderian became his supervisor. Mr. Hatfield, at age 51, was promoted to vice-president of the loan servicing department on Mr. Guderian's recommendation. From 1981 to 1984, Mr. Guderian's annual evaluation of Mr. Hatfield was "good" overall with salary increases recommended. There was some difficulty in the working relationship between Mr. Guderian and Mr. Hatfield, as indicated by his submission of three letters of resignation, which were refused by Columbia Federal, between 1981 and 1983.

In late 1983 or early 1984, in addition to his regular duties, Mr. Hatfield became a member of the data process conversion committee representing the loan servicing division. In June 1985, Mr. Hatfield, then 56 years old, was offered reassignment to the newly created position of data process coordinator. Mr. Guderian told Mr. Hatfield his employment was "likely" to continue, but not guaranteed, for 3 to 5 years or longer, as the branches converted. Mr. Hat-

field would retain his title of vice-president and salary, and continue under Mr. Guderian's supervision. Mr. Hatfield accepted and on June 12, 1985, a letter from Mr. Guderian announced Mr. Hatfield's reassignment to "conversion manager" for the actual conversion process and ongoing liaison of the departments with the data process service provider after the conversion.

On May 21, 1985, Larry Hough applied to Columbia Federal for employment. Mr. Hough was 37 years old. On July 15, 1985, he was hired by Columbia Federal as loan servicing manager, filling the position Mr. Hatfield had previously held. He had 7 or 8 years of experience in loan administration, ultimately as vice-president of loan servicing responsible for loans about six times larger than Columbia Federal's. Mr. Hough was the most qualified applicant.

Mr. Hatfield's December 1985 annual review by Mr. Guderian contained criticisms of his ability to delegate, was rated "satisfactory" and his salary adjustment was deferred. At trial, Mr. Hatfield conceded this review was the most serious warning Mr. Guderian could have given him short of termination.

The actual data process conversion was scheduled for the weekend of February 15-17, 1986. In September 1985, key personnel were sent to Utah for data processing training by the service provider. Mr. Guderian chose not to send Mr. Hatfield. Mr. Hatfield believed this hindered his ability to do his job. Mr. Hatfield attended training sessions when the service provider came to Wenatchee in December through February. During this period several other department heads dealt directly with the service provider instead of through Mr. Hatfield.

During the February 15-17 conversion weekend, while others worked all weekend, Mr. Hatfield testified he came into the bank on Saturday morning and then left because he was not needed. Mr. Guderian testified the decision to eliminate the conversion coordinator position was made after conversion when management realized it was more efficient

for department heads to go directly to the service providers for their needs.

Mr. Hatfield was absent for surgery on March 3 and returned to work part-time the last day of March. Michael Van Finger, director of human resources, testified that around March 26 Interwest Bank requested Columbia Federal to indicate Mr. Hatfield's employment prospects as part of his loan application; Columbia Federal responded the probability of continued employment was "poor". On April 4, 1986, Mr. Hatfield was asked to resign or take early retirement because Columbia Federal had eliminated his position. Mr. Guderian testified Mr. Hough's successful assumption of data process responsibilities for his department contributed to the elimination of Mr. Hatfield's position. Mr. Van Finger testified management searched unsuccessfully for another position for Mr. Hatfield with Columbia Federal. Mr. Hatfield accepted the termination unwillingly.

Mr. Hatfield, 56 years old at the time of termination, was unsuccessful in finding satisfactory employment. He testified he had lost substantial retirement benefits and ultimately lost his home and self-esteem. In July 1987, he filed a complaint against Columbia Federal alleging age discrimination, breach of contract, and promissory estoppel. The case was dismissed on summary judgment in December 1988 and appealed. In *Hatfield v. Columbia Fed. Sav. Bank*, 57 Wn. App. 876, 883, 790 P.2d 1258 (1990), the court found an inference of age discrimination from contradicting assertions regarding Mr. Hatfield's performance, when viewed in the context Mr. Guderian (1) indicated the new position would be long-term and (2) replaced him with a younger person. The grant of summary judgment was affirmed except as to age discrimination, which was reversed; the case was remanded for trial. *Hatfield*, at 883. A jury trial commenced on April 1, 1991. After 3 days of testimony, Mr. Hatfield rested and the court granted Columbia Federal's motion to dismiss, finding there was no proof of age discrimination beyond conjecture or speculation. Mr. Hatfield moved for reconsideration. The

motion was denied based on lack of evidence age was a determinative factor in terminating Mr. Hatfield. This appeal timely followed.

■ The standard of review for a motion to dismiss after plaintiff rests is well established:

> In ruling on a motion to dismiss for insufficiency of evidence [pursuant to RCW 4.56.150] either the trial court or the appellate court must accept as true the nonmoving party's evidence and draw all favorable inferences that may reasonably be evinced. The motion may be granted only if it can properly be said as a matter of law that there is no evidence or reasonable inference therefrom to sustain a verdict for the nonmoving party.

(Citations omitted.) *Baldwin v. Seattle*, 55 Wn. App. 241, 247, 776 P.2d 1377 (1989) (quoting *Phennah v. Whalen*, 28 Wn. App. 19, 22, 621 P.2d 1304 (1980), *review denied*, 95 Wn.2d 1026 (1981)). "The reviewing court does not weigh the evidence, it merely determines whether the nonmoving party's evidence is sufficient to justify, though not to compel, a verdict in its favor." *Baldwin*, at 247.

■ Washington continues to follow the burden allocation scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973) and *Xieng v. Peoples Nat'l Bank*, 120 Wn.2d 512, 519, 844 P.2d 389 (1993). In an age discrimination case the plaintiff has the initial burden of establishing a prima facie case by showing: (1) membership within the protected class of 40 to 70 years of age, (2) discharge, (3) apparently satisfactory work, and (4) replacement by a younger person. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 362, 753 P.2d 517 (1988). This creates a rebuttable presumption the discharge was motivated by age discrimination. *Carle v. McChord Credit Union*, 65 Wn. App. 93, 99, 827 P.2d 1070 (1992). Satisfaction of this burden is not seriously disputed here. Viewing the evidence in the light most favorable to Mr. Hatfield, the record shows Mr. Hatfield was 43 years old when hired and 56 years old when he was discharged by Columbia Federal. Although his 1985 annual review was "satisfactory", his salary was deferred and he admitted at

trial such an evaluation constituted a serious warning of unsatisfactory performance. After his discharge, Mr. Hatfield's duties as data process coordinator were allocated to other department heads. Mr. Hough, then 38 years old, performed the data processing responsibilities for the loan servicing department.

■ ■ Once a prima facie case of age discrimination is established, the burden shifts to the employer to produce sufficient evidence to support a finding plaintiff was discharged for a nondiscriminatory reason. *Grimwood*, at 364; *Carle*, at 100. Such an explanation serves to recast the factual issue with greater clarity and specificity. *Texas Dep't of Comm'ty Affairs v. Burdine*, 450 U.S. 248, 255, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). This is also a burden of production and its satisfaction here is not seriously disputed.

If the employer satisfies this burden, the presumption raised by the prima facie case is rebutted and the plaintiff must come forward to show the employer's articulated reasons are mere pretext for discharge motivated by age discrimination. *Grimwood*, at 364; *Carle*, at 101. The plaintiff may show this directly or indirectly by demonstrating the explanation is "unworthy of credence". *Carle*, at 102 (citing *Burdine*, 450 U.S. at 256). This is also a burden of production for purposes of deciding a motion to dismiss after the plaintiff rests. *See Carle*, at 102.

All three stages were presented during the 3 days of testimony of Mr. Hatfield's case in chief. After Mr. Hatfield rested his case, the trial court granted Columbia Federal's motion to dismiss. In denying the motion for reconsideration, the trial court stated, "there's no evidence in this case at all that age was determinative at all, either directly, comparatively, statistically or in any other way that this Court can fathom".

Mr. Hatfield contends the trial court erroneously held he could not defeat the motion to dismiss by showing his termination was "unworthy of credence". Columbia Federal concedes Mr. Hatfield may defeat the motion for dismissal by such a showing but contends the evidence must also be probative of *age discrimination. Grimwood*, at 365.

 We agree with Columbia Federal, for the reason stated in *Askin v. Firestone Tire & Rubber Co.*, 600 F. Supp. 751, 755 (E.D. Ky. 1985), *aff'd*, 785 F.2d 307 (6th Cir. 1986):

> But the "pretext" must be a pretext for discrimination, not a pretext of some other ill-advised or unreasonable factor, such as a personality conflict or unreasonably high but evenly applied standards of performance.

*Grimwood*, at 364, states: "Once the employer fulfills his burden . . . to create a genuine issue of material fact the plaintiff must satisfy his ultimate burden of persuasion and show that the employer's articulated reasons are a mere pretext for what, in fact, is a discriminatory purpose." Ultimately, the plaintiff must prove age was the "determining factor" in the employer's decision to terminate the employee. *Stork v. International Bazaar, Inc.*, 54 Wn. App. 274, 284, 774 P.2d 22 (1989). To survive the motion to dismiss, therefore, Mr. Hatfield must produce sufficient evidence to create a factual issue of age discrimination. Here, Mr. Hatfield contends he has placed at issue the employer evidentiary reason, leaving only the inference of age discrimination as the reason for his discharge. Although the evidence suggests Columbia Federal treated Mr. Hatfield unfairly, by not offering him the training and support necessary for success in his new job, and raises the inference Columbia Federal was looking for an excuse to discharge him, this does not lead to a reasonable inference of age discrimination. Mr. Hatfield admitted at trial he had no basis to believe Mr. Guderian treated him or any other older employee differently because of age, and he had no sense of age discrimination when he took the coordinator position. In fact, Mr. Guderian and others in management were older than Mr. Hatfield.

 Columbia Federal questions whether at this third stage Mr. Hatfield's burden is one of persuasion rather than production, relying on statements in *Grimwood*, at 363 and 364.[1]

---

[1]*Grimwood*, at 363-64, states: "[T]he burden of *persuasion* remains at all times upon the plaintiff. . . . Once the employer fulfills his burden of production, to create a genuine issue of material fact the plaintiff must satisfy his ultimate *burden of persuasion* and show that the employer's articulated reasons are a mere pretext for what, in fact, is a discriminatory purpose." (Citations omitted. Some italics ours.)

The narrow issue here is whether Mr. Hatfield produced sufficient evidence to survive a motion for dismissal after he rested his case at trial, not whether he satisfied his burden of persuasion after the case was submitted to the jury. The function of a "burden of production" is to identify whether there is an issue of fact suitable for the trier of fact, while a "burden of persuasion" defines the degree of certainty by which the trier of fact must resolve an issue. *In re C.B.*, 61 Wn. App. 280, 283, 810 P.2d 518 (1991).

> To question the sufficiency of evidence is to question whether the burden of *production* has been met. The burden of production is met when the plaintiff produces evidence sufficient to support a finding of each element of the cause of action. When it is met, it is said that the evidence is "sufficient" or "substantial".

(Citation omitted. Italics ours.) *Carle*, at 98.

■ Mr. Hatfield admits he produced no direct, comparative or statistical evidence of age discrimination in response to the proffered nondiscriminatory reasons for his dismissal. He relies, in part, on evidence an unidentified person inquired into Mr. Hatfield's retirement benefits, giving "3-1-86" as his retirement date to suggest the decision to discharge Mr. Hatfield was made before the conversion weekend, contrary to Mr. Guderian's testimony. While this raises a factual issue as to Mr. Guderian's credibility, it is not especially probative of age discrimination. Inquiring into an employee's pension status does not establish a prima facie age discrimination violation. *See Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659-60 (7th Cir. 1991); *Roberts v. ARCO*, 88 Wn.2d 887, 892, 568 P.2d 764 (1977).

Viewing the evidence in a light most favorable to Mr. Hatfield, his claim was speculative. He failed to produce any evidence relevant to age discrimination.

Affirmed.

SHIELDS, C.J., and THOMPSON, J., concur.

Review denied at 121 Wn.2d 1030 (1993).